JOHNSON, Chief Justice, additionally concurs and assigns reasons. 11While I agree in full with the majority opinion, I write separately to emphasize that both the federal government and the State of Louisiana do not intend for children to remain in foster care permanently, and the safety of children is paramount in making decisions about custody. See Adoption and Safe Families Act of 1997, 42 U.S.C.A. § 601, et seq.-, La. Ch. C. art. 601. Pursuant to the Adoption and Safe Families Act of 1997, states are mandated to establish “permanency plans” for children within the foster care system. The Act provides that such plans must demonstrate, inter alia, that the State make reasonable efforts to “preserve and reunify” the family. If such measures fail, the State is mandated to make reasonable efforts to place a child for adoption or with a legal guardian. See State ex rel. J.M., 02-2089 (La. 1/28/03), 837 So.2d 1247, 1256. This court has recognized that “[although our primary goal is to reunite the family, termination is appropriate to free the child for adoption if reunification is not possible. ‘Forcing children to remain in foster care indefinitely, when there is no hope of reuniting them with their families, runs afoul of the state and federal mandates to further the best interests of the child.’ ” Id. at 1256-57. In this case, C.F. has remained in foster care for more than three years. She is placed in a home where all of her needs are being met. She is placed with caregivers who want to adopt her and she wants to be adopted by them. |2I agree with the majority that considering the best interests of the child requires this court to terminate C.F. Jr.’s parental rights. While I recognize this father made some efforts toward his case plan goals, those efforts were not sufficient to regain custody of his daughter. The fact remains that there has been no improvement in the father’s situation, and the conditions that led to C.F.’s removal persist. Most notable in my view is his failure to provide safe and suitable housing at any point during this case. While the physical condition of the housing he obtained in June of 2016 may be adequate for him, the father’s two sons and his daughter-in-law also live in the home, all of whom have open foster care cases or have had their parental rights terminated. This court certainly cannot return custody to the father while he lives in a home with his sons, whose own children cannot safely live with them. The purpose of a termination of parental rights proceeding is to “protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption.” La. Ch. Code art. 1001. In this case, we do not question the father’s love for C.F. We recognize a bond exists between them and that C.F. Jr. desires a continued relationship with his daughter. However, the overriding concern must be the best interests of C.F. The record does not establish that the father’s circumstances have materially changed to demonstrate that it would now be in the best interests of C.F. for the father to retain his parental rights. This court cannot ignore the fact that the father has demonstrated an inability to care for his daughter. “Children have the right to live in a safe, secure environment and to be reared by someone who is capable of caring for them.” State ex rel. J.M., 837 So.2d at 1256. In this case, despite his efforts, I find the father is incapable of meeting the needs of his daughter and his parental rights must be terminated.